UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ALLEN COOPER,

　　　　　　　Petitioner,

　　　　　　　　　　　　　　　　　Case No. 16-10549
v.　　　　　　　　　　　　　　　　Honorable Denise Page Hood

RANDALL HAAS,[1]

　　　　　　　Respondent.
_____/

**OPINION AND ORDER
DENYING PETITIONER'S MOTION FOR A STAY [8],
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS [1],
DENYING A CERTIFICATE OF APPEALABILITY,
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL,
AND DIRECTING THE CLERK OF COURT TO AMEND THE CAPTION**

　　　Petitioner Michael Allen Cooper ("Petitioner") has filed a *pro se* habeas

corpus petition under 28 U.S.C. § 2254 and a motion to hold the habeas petition in

abeyance while he pursues state remedies.  The habeas petition challenges

Petitioner's convictions for criminal sexual conduct (CSC) on grounds that:  (1) the

trial court failed to give a specific jury instruction on unanimity; (2) the prosecutor

committed misconduct, and defense counsel failed to object; and (3) the trial court

_____

[1]  The parties spelled Respondent's first name as "Randel" in their pleadings, but
the Court believes the correct spelling is "Randall."  *See*
www.Michigan.gov/corrections.  The Court will direct the Clerk of the Court to
amend the caption to reflect the correct spelling.

erred when departing from the sentencing guidelines.  Respondent Randall Haas
("Respondent") argues in an answer to the habeas petition that Petitioner's claims
are partially unexhausted, waived, procedurally defaulted, not cognizable on
habeas review, or meritless.

Having reviewed the pleadings and record, the Court concludes that
Petitioner's exhausted and unexhausted claims lack merit.  The Court therefore
declines to grant a stay and will deny the habeas petition.

## I. Background

Petitioner was charged in Oakland County, Michigan with five counts of
CSC.  The charges arose from allegations that Petitioner sexually abused two of his
young nephews during the years 2001 and 2006.  Counts one and two charged
Petitioner with first-degree CSC (sexual penetration) involving the older nephew
("the victim"), and counts three and four charged Petitioner with second-degree
CSC (sexual contact) with the victim.  The prosecutor proceeded on alternative
theories.  She maintained that Petitioner was guilty of the first four charges because
the victim was under the age of thirteen at the time, *see* Mich. Comp. Laws §
750.520b(1)(a), or because the victim was thirteen, fourteen, or fifteen years of age
at the time and Petitioner was related to the victim, *see* Mich. Comp. Laws §
750.520b(1)(b)(ii).  Count five charged Petitioner with second-degree CSC

involving the victim's brother who was under the age of thirteen at the time of the crime against him.

The primary evidence at trial came from the victim who was nine to fourteen years old when the abuse occurred. He was nineteen years old at trial. He estimated that Petitioner engaged in sexual activity with him approximately one hundred times. The sexual activity included masturbation, sexual contact, oral penetration, and attempted anal penetration. During the years in question, Petitioner would buy him alcohol, cigarettes, and expensive items even though Petitioner's wife often lacked gas money.

In 2011, when he was older, he confronted Petitioner about Petitioner's adopted son smoking a substance called K2 with the victim's younger brother at Petitioner's home. He informed Petitioner that he intended to take the matter to a higher authority. He then left Petitioner's home and went to his father's home. Petitioner came over and said something like, "Watch out, my family's Sicilian." He (the victim) then filed a police report about Petitioner's threat because he was afraid of Petitioner. He subsequently informed his aunt of Petitioner's abusive behavior toward him because he feared that Petitioner would abuse his younger brother in the same way that Petitioner had abused him. He asked his aunt to tell his mother what he had said. He later disclosed the abuse to his mother and then

went to the police department and reported what Petitioner had done to him over the years.  He denied asking a friend to lie and say that Petitioner had molested the friend, too.

One of the victim's aunts testified that, in September of 2011, the victim provided her with disturbing information about sexual activity between Petitioner and the victim.  She relayed the information to the victim's mother.

The victim's mother testified that she spoke with the victim and that the victim informed her about sexual activity that had occurred between Petitioner and him.  At the mother's suggestion, the victim reported the incident to the police. The mother subsequently spoke with her younger son, who stated that Petitioner also had engaged in sexual activity with him.  Reflecting back, she thought that she should have recognized signs that something was wrong.  The victim, for example, would be moody when he came home from Petitioner's home, and he would pick his feet and hands to the extent that his sores had to be lanced to allow fluid to drain from them.

The victim's father testified that the victim had a close relationship with Petitioner from the age of eight or nine until he was fourteen or fifteen years old. Initially, he allowed the victim to work for Petitioner in Petitioner's lawn business. He later put a stop to that because the amount of time that Petitioner would spend

with the victim and the number of times he would come to the home and pick up the victim became excessive. Petitioner gave the victim large amounts of money and expensive gifts even though Petitioner could not pay his gas bill to heat his home.

One of the victim's cousins testified that, when the victim was twelve or thirteen years old, he talked about how much he hated Petitioner. During the same time period, the victim began to pick the skin off his hands.

Another cousin testified that Petitioner would furnish the victim, the victim's cousins, and other boys with alcohol and cigarettes at his home. One time, after the dog defecated on the floor, Petitioner removed the dog from the house and shot the dog. Sometimes Petitioner and the victim would argue and the victim would get upset and cry or pick his hands. Other times Petitioner would engage in inappropriate sexual activity in the boys' presence.

The victim's younger brother was sixteen years old at trial. He testified that, on one occasion when he was ten to twelve years old, Petitioner masturbated in his presence. The next morning he was attempting to make breakfast when Petitioner approached him and masturbated on the boy's lower body. Petitioner told him that what happened there, stayed there. The boy did not disclose the incident to anyone

until a few months before trial when his mother asked him whether anything had happened between Petitioner and him.

The victim's former girlfriend testified that she was present when the victim disclosed the sexual abuse to his mother in September of 2011. The victim was hyperventilating, crying, and vomiting as he tried to explain what had happened between Petitioner and him.

Petitioner did not testify, but three witnesses testified on his behalf. One witness testified that Petitioner did not start his lawn business until 2004. Another witness testified that the victim was a friend of his and that the victim had asked him in October of 2011 to lie and say that Petitioner had sexually touched and molested him.

A third witness testified that Petitioner was his step-dad and that, in August of 2011, the victim took some scrap metal from the witness's home without Petitioner's permission. The following month, the victim came over to Petitioner's home and argued with Petitioner about Petitioner's adopted son giving K2 to the victim's younger brother. Before the victim left the home, he said, "I'll get you, you'll see."

Petitioner's defense was that there was no credible evidence that Petitioner was guilty of the crimes with which he was charged. Defense counsel maintained

that the victim was a thief and that both the victim and his younger brother were liars.

On August 20, 2012, the jury found Petitioner guilty of the four charges of CSC involving the victim.  These included:  two counts of first-degree CSC and two counts of second-degree CSC.  The jury acquitted Petitioner of the additional count of second-degree CSC involving the victim's younger brother.  On September 28, 2012, the trial court sentenced Petitioner to prison for twenty-five to sixty years for the first-degree CSC convictions and to a concurrent term of four to fifteen years for the second-degree CSC convictions.

On appeal from his convictions, Petitioner argued that:  (1) the prosecutor's theories of guilt, as presented to the jury, allowed for a less-than-unanimous verdict; (2) the prosecutor's improper argument deprived him of a fair trial and due process, and trial counsel was ineffective was failing to object; and (3) the trial court's upward departure from the sentencing guidelines necessitated reversal and re-sentencing.  The Michigan Court of Appeals rejected each one of these claims and affirmed Petitioner's convictions in an unpublished, *per curiam* opinion.  *See People v. Cooper*, No. 313562 (Mich. Ct. App. Feb. 25, 2014).

Petitioner raised the same claims in the Michigan Supreme Court.  He also asked the state supreme court to consider the United States Supreme Court's

decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), which was decided

while Petitioner's case was pending in the Michigan Court of Appeals.  The

Michigan Supreme Court initially held Petitioner's claim in abeyance, pending a

decision in *People v. Lockridge*, Docket No. 149073.  *See People v. Cooper*, 849

N.W.2d 355 (Mich. 2014).  Following its decision in *People v. Lockridge*, 498

Mich. 358; 870 N.W.2d 502 (2015), *cert. denied sub nom. Michigan v. Lockridge*,

136 S. Ct. 590 (2015),[2] the Michigan Supreme Court denied Petitioner's

application for leave to appeal because it was not persuaded to review the

questions presented to it.  *See People v. Cooper*, 498 Mich. 904; 870 N.W.2d 578

(2015).  On February 2, 2016, the Michigan Supreme Court denied Petitioner's

motion for reconsideration.  *See People v. Cooper*, 499 Mich. 858; 873 N.W.2d

553 (2016).

---

[2] In *Lockridge,* the Michigan Supreme Court held that Michigan's sentencing guidelines were unconstitutional under *Alleyne* to the extent the guidelines required judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables that mandatorily increased the floor of the guidelines minimum sentence range.  *Lockridge*, 498 Mich. at 364.  The supreme court stated that the guidelines would be advisory, rather than mandatory, in the future, *id*. at 365, 399, and that, "in cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error."  *Id*. at 397.

On February 12, 2016, Petitioner filed his habeas corpus petition.  On April 22, 2016, Respondent filed his answer to the habeas petition, and on May 19, 2016, Petitioner moved for a stay of this case.

## II.  The Motion for a Stay

Petitioner seeks a stay so that he can return to state court and exhaust state remedies for a new claim about his former appellate attorney.  Petitioner contends that appellate counsel was ineffective for failing to raise a claim under *Alleyne* and for failing to include an argument about trial counsel in his statement of the first issue in the Michigan Court of Appeals.

A district court may stay a case in "limited circumstances," such as when "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).  Petitioner, however, has not shown good cause for failing to exhaust state remedies for all his claims before he filed his habeas petition,[3] and his unexhausted claim about appellate counsel is meritless because, as explained more fully below,

---

[3] Petitioner contends that he could not have raised a claim about appellate counsel on direct appeal while he was represented by the attorney and that a post-conviction motion for relief from judgment is his first opportunity to raise a claim about appellate counsel.  But he could have filed a motion for relief from judgment before he filed his habeas petition, and a properly filed motion for post-conviction relief would have tolled the statute of limitations.  28 U.S.C. § 2244(d)(2).

the underlying claims regarding trial counsel and *Alleyne* lack merit.  "[B]y

definition, appellate counsel cannot be ineffective for a failure to raise an issue that

lacks merit."  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).  The Court

therefore denies Petitioner's motion for a stay (document no. 8) and will proceed to

address Petitioner's current claims, using the following standard of review.

### III.   Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for

persons in state custody is provided by 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v.

Richter*, 562 U.S. 86, 97 (2011).  Pursuant to § 2254, the Court may not grant a

state prisoner's application for the writ of habeas corpus unless the state court's

adjudication of the prisoner's claims on the merits

 (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas
court may grant the writ if the state court arrives at a conclusion
opposite to that reached by [the Supreme] Court on a question of law

> or if the state court decides a case differently than [the Supreme]
> Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause [of § 2254(d)(1)], a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from [the Supreme] Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the

Court for Part II).  "[A] federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.  Rather,

that application must also be unreasonable."  *Id*. at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-

court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that

state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537

U.S. 19, 24 (2002) (*per curiam*)."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "A

state court's determination that a claim lacks merit precludes federal habeas relief

so long as 'fairminded jurists could disagree' on the correctness of the state court's

decision."  *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S.

652, 664 (2004)).  To obtain a writ of habeas corpus from a federal court, a state

prisoner must show that the state court's ruling on his or her claim "was so lacking

in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement."  *Id*. at 103.

11

## IV.  Discussion

## A.  The Jury Instructions

Petitioner alleges that the trial court's jury instructions on counts one through four permitted the jury to find him guilty on less than a unanimous verdict because the court failed to read a specific unanimity instruction to the jury.  The trial court did inform the jury that its decision had to be unanimous,[4] but, according to Petitioner, the trial court should have instructed the jurors that they must decide between the prosecutor's alternative theories and base their verdict on one of the two theories.  In other words, Petitioner asserts that the jury should have been instructed to decide whether Petitioner was guilty because he engaged in sexual conduct with someone under thirteen years of age or whether he was guilty because the victim was thirteen, fourteen, or fifteen years of age and related to Petitioner in the fourth degree.[5]  Absent a specific unanimity jury instruction on the

---

[4]  The trial court stated that

> [a] verdict in a criminal case must be unanimous.  In order to return a verdict, it is necessary that each of you agrees on that verdict.  In the jury room, you will discuss the case among yourselves, but ultimately each of you will have to make up your own mind.  Any verdict must represent the individual considered judgment of each juror.

(Trial Tr. Vol. 4, at 209, Aug. 17, 2012.)

[5]  When instructing the jurors on the age element of the crimes in counts one through four, the trial court said that the prosecutor had to prove the victim was "less than 13 years old at the time of the alleged act," or, under the prosecutor's second theory, the victim "was 13, 14, or 15 years old at the time of the alleged

prosecutor's theories, Petitioner contends it is unclear whether the jury

unanimously found that the prosecution proved every fact necessary to constitute

the crimes with which he was charged.

### 1.  Waiver and Lack of Merit

The Michigan Court of Appeals determined on direct appeal that Petitioner

waived review of his claim and thereby extinguished the error.  The Court of

Appeals also determined that Petitioner was not entitled to a specific unanimity

instruction and that the trial court's instructions were legally correct.

A waiver ordinarily is "the intentional relinquishment or abandonment of a

known right or privilege."  *Johnson v. Zerbst*, 304 U.S. 458, 464 (1983).  Waiver

extinguishes appellate review.  *See United States v. Olano*, 507 U.S. 725, 733

(1993) ("Mere forfeiture, as opposed to waiver, does not extinguish an 'error' . . . .

").  When a defendant knowingly waives an error, his or her challenge is forever

foreclosed, and cannot be resurrected on appeal.  *United States v. Saucedo*, 226

F.3d 782, 787 (6th Cir. 2000).  These rules apply on habeas corpus review of a

state prisoner's conviction.  *See Morgan v. Lafler*, 452 F. App'x 637, 646 n.3 (6th

Cir. 2011) (stating that, "[a]though the district court found [the petitioner's] jury-

---

act" and "the defendant [was] related to the complainant by blood or marriage
within the fourth degree as his uncle."  (Trial Tr. Vol. 4, 204-07, Aug. 17, 2012.)

instruction claim forfeited by procedural default for failure to object, the district court could just as easily have rejected the claim on the basis of waiver").

Although " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and . . . 'do not presume acquiescence in the loss of fundamental rights,' " *Johnson*, 304 U.S. at 464 (footnotes omitted), the record supports the state appellate court's conclusion that Petitioner waived review of his claim about the jury instructions. His attorney specifically stated that he had no objection to the trial court's jury instructions as read to the jury and that the trial court "did a great job" of instructing the jury. (Trial Tr. Vol. 4, at 211-12, Aug. 17, 2012). By expressing satisfaction with the jury instructions, Petitioner, through his attorney, intentionally relinquished or abandoned a known right to object to the jury instructions. *Morgan*, 452 F. App'x at 646 n.3.

Petitioner's claim also lacks merit, because the Supreme Court "has held that although the Sixth Amendment right to trial by jury requires a unanimous jury verdict in federal criminal trials, it does not require a unanimous jury verdict in state criminal trials. *McDonald v. Chicago,* 561 U.S. 742, 766 n. 14 (2010) (citing *Apodaca v. Oregon*, 406 U.S. 404 (1972), and *Johnson v. Louisiana*, 406 U.S. 356 (1972)). The Court therefore rejects Petitioner's claim that he was entitled to a specific unanimity jury instruction.

14

### 2.  Trial Counsel's Failure to Object to the Jury Instructions

Petitioner argues that trial counsel was ineffective for failing to object to the lack of a specific unanimity jury instruction.

#### a.  Procedural Default

The Michigan Court of Appeals determined that Petitioner's claim about trial counsel was not properly presented for review because Petitioner failed to include it in his statement of the issues presented to the court.  As a result of this finding, Respondent argues that Petitioner procedurally defaulted his claim about trial counsel.

To obtain relief on procedurally defaulted claims, a habeas petitioner "must establish cause and prejudice for the defaults.  He must also show that the claims are meritorious." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) (internal citation omitted).  Petitioner's claim about trial counsel lacks merit for the reason given below, and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  The Court "cut[s] to the merits here, since the cause-and-prejudice analysis adds nothing but complexity to the case." *Babick*, 620 F.3d at 576.

#### b.  On the Merits

Petitioner asserts that his trial attorney should have objected to the lack of a specific unanimity jury instruction.  The Michigan Court of Appeals determined in an alternative holding that trial counsel did not act unreasonably in failing to object to the jury instructions because the trial court's instructions were legally correct.

### i.  Clearly Established Federal Law

To prevail on his claim about trial counsel, Petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*," 466 U.S. 668, 687 (1984). The "deficient performance" prong of the *Strickland* test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*.

To demonstrate that counsel's performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

### ii. Application

The Michigan Court of Appeals pointed out on review of Petitioner's claim that,

> "when the state offers evidence of multiple acts by a defendant, each of which would satisfy the actus reus elements of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt." *People v. Cooks*, 446 Mich. 503, 530; 521 NW2d 275 (1994).

*Cooper*, 2014 WL 783848, at *1. The Court of Appeals went on to say that,

under *People v. Gadomski*, 232 Mich. App. 24, 31-32; 592 N.W.2d 75 (1998),

> "[w]hen a defendant is tried on a charge of CSC [ ], and more than one aggravating circumstance is supported by the facts, it is not error for the trial court to instruct the jury, in the alternative, regarding each of the applicable aggravating circumstances alleged by the prosecution."

*Id*. The Court of Appeals then pointed out that, in this case,

> although there were multiple penetrations/contacts alleged, each form of penetration/contact was presented as a separate count. Additionally, while the victim testified to multiple acts that could have served as the basis for each individual count, the acts presented for each count were not "materially distinct" and "were tantamount to a continuous course of conduct." *Cooks*, 446 Mich. at 511, 528. Each count also included alternative aggravating circumstances: either the victim was under 13 or the victim was aged 13, 14, or 15 and related to defendant. Because the victim testified that the sexual incidents occurred from age 9 to age 14, "more than one aggravating circumstance [was] supported by the facts." *Gadomski*, 232 Mich. App. at 31–32. "Accordingly, defendant would have been properly convicted . . . even if some of the jurors believed that he committed

17

> the offense solely on the basis of one aggravating circumstance, while the rest of the jurors believed that he committed the offense solely on the basis of another one of the aggravating circumstances." *Id.*

*Id.* The Court of Appeals concluded that the trial court's jury instructions were legally correct.

"[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). And because the Michigan Court of Appeals concluded that the trial court's jury instructions were correct, defense counsel was not ineffective for failing to object to the instructions. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

The Michigan Court of Appeals reasonably concluded that defense counsel's failure to object to the jury instructions was not ineffective assistance. As a result, Petitioner is not entitled to habeas relief on the basis of his claim about trial counsel.

### 3. *Alleyne*

Petitioner asserts that the lack of a specific unanimity jury instruction violated *Alleyne*.  Petitioner maintains that the victim's age was an aggravating element of the crime or a special circumstance which the jury, rather than the judge at sentencing, had to find beyond a reasonable doubt.

*Alleyne* held:

> Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt.  Mandatory minimum sentences increase the penalty for a crime.  It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury.

*Alleyne*, 133 S. Ct. at 2155 (internal citation omitted).  In other words, "[f]acts that increase the mandatory minimum sentence are . . . elements [of a crime] and must be submitted to the jury and found beyond a reasonable doubt."  *Id.* at 2158.

*Alleyne* involved judicial factfinding at sentencing.  The Supreme Court has not extended its holding to require courts in state criminal trials to give a specific unanimity jury instruction on a prosecutor's alternative theories of guilt.  To the extent the Michigan Supreme Court adjudicated Petitioner's *Alleyne* claim on the merits, the state court's decision was not "contrary to" any United States Supreme Court holding, "[b]ecause none of [the Supreme Court's] cases confront 'the specific question presented by this case.' "  *Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) (quoting *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (per curiam )).  For

19

this reason, Petitioner's reliance on *Alleyne* in his challenge to the jury instructions does not warrant habeas corpus relief.

## B. The Prosecutor

In his second claim, Petitioner asserts that the prosecutor introduced inadmissible character or "bad acts" evidence for which she failed to give proper notice. Petitioner also asserts that the prosecutor mis-characterized evidence, gave unsworn testimony, and bolstered the victim's credibility. Petitioner contends that trial counsel was ineffective for failing to object to the prosecutor's conduct and that the cumulative effect of the trial errors deprived him of a fair trial.

The Michigan Court of Appeals reviewed Petitioner's prosecutorial-misconduct claim for "plain error" because Petitioner did not preserve his claim for appellate review by objecting at trial. The Court of Appeals then addressed each of Petitioner's claims and found no error requiring reversal of Petitioner's convictions.

Respondent argues on the basis of the state court's "plain-error" ruling that Petitioner procedurally defaulted his claim regarding the prosecutor. Because the Court has found it more efficient to address the merits of Petitioner's claim than to analyze whether his claim is procedurally defaulted, the Court excuses the alleged procedural default and proceeds to the merits of Petitioner's claim.

### 1. Clearly Established Federal Law

"Claims of prosecutorial misconduct are reviewed deferentially" in a habeas corpus proceeding. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

When the issue is the prosecutor's remarks at trial, the relevant "clearly established Federal law" is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (*per curiam*). In *Darden*, the Supreme Court stated that

> it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)]. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at 642, 94 S.Ct., at 1871.

*Darden*, 477 U.S. at 181.

"The prosecution necessarily has 'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*,

21

567 F.3d 225, 233 (6th Cir. 2009) (quoting *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008)). The Court must analyze the "disputed comments in the context of the trial as a whole and recogniz[e] that inappropriate comments alone do not justify reversal where the proceedings were 'otherwise fair.' " *Henry*, 545 F.3d at 377 (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)).

"In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citing *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979)). On habeas review, an error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

### 2. Other Acts Evidence

Petitioner's first claim about the prosecutor is that she introduced improper character evidence about Petitioner without giving proper notice under the Michigan Rules of Evidence. The disputed evidence was testimony that Petitioner shot and killed his dog. (Trial Tr. Vol. 3, 64-65, 257, Aug. 16, 2012.)

Petitioner's claim lacks merit for a number of reasons. First, "[t]o the extent that any testimony and comments violated Michigan's rules of evidence, such

errors are not cognizable on federal habeas review," *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009), because "[a] federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Second, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). As such, "there is no Supreme Court precedent that the trial court's decision could be deemed 'contrary to,' under AEDPA." *Id.* at 513.

Third, although an evidentiary error can violate the constitutional right to due process if the error rendered the proceeding fundamentally unfair, *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004), the prosecutor did not introduce testimony about the dog as character or propensity evidence or to show that Petitioner was a bad person. Instead, the prosecutor used the evidence to explain why the victim was afraid of Petitioner. This, in turn, explained why the victim did not disclose Petitioner's sexual abuse sooner, and the Michigan Court of Appeals determined that "the evidence's probative value was not substantially outweighed by the

danger of unfair prejudice" under Michigan Rule of Evidence 403. *Cooper*, 2014 WL 783848, at *2.

Finally, the trial court instructed the jurors that they must not convict Petitioner solely because they thought he was guilty of other bad conduct. (Trial Tr. Vol. 4, at 209, Aug. 17, 2012.) The court also charged the jurors not to be influenced by sympathy or prejudice. (Trial Tr. Vol. 1, 251, Aug. 13, 2012; Trial Tr. Vol. 4, 197, Aug. 17, 2012.) Jurors are presumed to follow their instructions. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). The Court concludes that Petitioner's claim is not cognizable on habeas review and that the prosecutor's introduction of other "bad acts" evidence was not fundamentally unfair and did not deprive Petitioner of due process.

### 3. The Argument about Scrap Metal

Petitioner contends that the prosecutor falsely stated in her closing argument that the victim never denied stealing scrap metal. (Trial Tr. Vol. 4, at 154, Aug. 17, 2012.) "Misrepresenting facts in evidence can amount to substantial error," *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000), and the victim did deny stealing scrap metal from Petitioner's home when he testified at the preliminary examination. (Prelim. Examination Tr. at 78, Jan. 5, 2012.)

The prosecutor's comment was proper, however, because the comment was based on the victim's trial testimony that he took some scrap metal from Petitioner's home and sold it for cash at Drayton Iron and Metal. (Trial Tr. Vol. 3, at 183-84, 193, Aug. 16, 2012). His conflicting testimony at the preliminary examination was not introduced at trial.

Even if the prosecutor's remark were deemed improper, the trial court instructed the jurors that the attorneys' statements and arguments were not evidence. (Trial Tr. Vol 1, 246, Aug. 13, 2012; Trial Tr. Vol. 4, at 199, Aug. 17, 2012.) Given this instruction, and the relative insignificance of the testimony about scrap metal, any error on the prosecutor's part was harmless.

### 4. An Erroneous Assertion

Petitioner alleges next that the prosecutor erroneously stated during closing arguments that Petitioner shot his dog in front of the victim. (Trial Tr. Vol. 4, at 156, 167, Aug. 17, 2012.) The Michigan Court of Appeals agreed with Petitioner, but concluded that the error did not require reversal.

The record supports Petitioner's contention that the prosecutor misstated the facts. The victim implied that he was in bed when Petitioner shot his dog. He apparently heard, but did not see, Petitioner take the dog to the garage and shoot the dog. (Trial Tr. Vol. 3, at 64-65, Aug. 16, 2012.) The victim's cousin also

testified about the incident and said nothing about actually observing the shooting.

His only comment about the incident was, "The dog had defecated on the floor and

the defendant took the dog out back and shot the dog." (*Id*. at 257.)

Nevertheless, defense counsel pointed out the prosecutor's error in his

closing argument when he said:

> The prosecutor said in her closing to you that Michael Cooper shot the
> dog in front of him.  Did you hear that testimony?  I submit to you,
> you did not.

(Trial Tr. Vol. 4, at 182, Aug. 17, 2012.)  And the prosecutor stated on rebuttal that

she did not intend to mislead the jury when she talked about the shooting of the

dog.  She encouraged the jurors to rely on their collective memories when deciding

what the truth was, and she reminded them that her arguments were just that, mere

arguments.  (*Id*. at 192.)

The trial court, moreover, instructed the jurors that the lawyers' arguments

were not evidence and that the jurors should only accept the things the lawyers said

if the lawyers' remarks were supported by the evidence or by their own common

sense and general knowledge.  (*Id*. at 199).  Given these instructions, as well as,

defense counsel's attempt to correct the error and the prosecutor's statement that

the jurors should rely on their collective memories, the erroneous statement about

the victim and his cousin observing Petitioner kill a dog could not have had a

substantial and injurious effect or influence on the jury's verdict.  The error was harmless.

### 5.  Bolstering

In his last claim about the prosecutor, Petitioner contends that the prosecutor improperly bolstered the victim's credibility by using leading questions to make the victim affirm her version of the events and by stating that the victim's testimony was consistent.  During her re-direct examination of the victim, the prosecutor asked the victim whether he had spoken with her at her office and suggested what he should say in court.  The victim responded that he had met with the prosecutor a few times, but that she had merely explained how the court was set up and that she had told him to tell the truth.  (Trial Tr. Vol. 3, at 207-09, Aug. 16, 2012.)  During her closing argument, the prosecutor stated that the victim was absolutely consistent and that the victim did not research the issues to determine what he should say in court to make people believe him.  (Trial Tr. Vol. 4, at 162, Aug. 17, 2012.)

The Michigan Court of Appeals determined that the prosecutor's questioning of the victim did not amount to vouching and that her closing argument about the victim's testimony being consistent was proper.  This Court agrees.  "Bolstering occurs when the prosecutor implies that the witness's testimony is corroborated by

evidence known to the government but not known to the jury." *United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999) (citing *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997)).

At no point did the prosecutor "suggest[] that [s]he possessed corroborative evidence that had been withheld from the jurors[;] nor did [s]he otherwise 'imply any special knowledge' of [the victim's] credibility." *United States v. Garcia*, 758 F.3d 714, 723 (6th Cir. 2014) (*citing United States v. Reid*, 625 F.3d 977, 984 (6th Cir. 2010)).  Her questioning of the victim about their meetings before trial was a response to defense counsel's questions regarding about the victim's preparation for trial and any discussions that the victim may have had with the prosecutor before trial.  (Trial Tr. Vol. 3, 160-61, Aug. 16, 2012.)  Because defense counsel insinuated through his questions that the prosecutor had influenced the victim's testimony, the prosecutor was permitted to fairly respond.  *See Angel v. Overberg*, 682 F.2d 605, 607–08 (6th Cir. 1982) ("The prosecutor is ordinarily entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel.")

The prosecutor's closing argument also did not amount to bolstering the victim's credibility.  "[She] spoke instead as an advocate seeking to restore, through argument rather than [her] own personal assurance, the credibility of [her]

chief witness.  That is a permissible prosecutorial function."  *Garcia*, 625 F.3d at

723.  The Michigan Court of Appeals reasonably concluded that the prosecutor's

questions and comments did not amount to bolstering.

### 6.  Defense Counsel's Failure to Object

Petitioner asserts that defense counsel's failure to object to the prosecutor's

conduct and request a cautionary instruction or a mistrial deprived him of effective

assistance and contributed to the jury's guilty verdict.  He also contends that the

cumulative errors deprived him of a fair trial.

The Michigan Court of Appeals concluded on review of this claim, that, that,

with the exception of the prosecutor's statement that the victim saw Petitioner

shoot the dog, trial counsel did not act unreasonably in failing to object to the

prosecutor's comments.  Regarding the prosecutor's incorrect statement about

Petitioner shooting his dog in the victim's presence, the Michigan Court of

Appeals concluded that the prosecutor's misstatement on this ancillary matter was

not prejudicial.

This Court agrees with the state court's conclusions.  The introduction of

"bad acts" evidence was permissible; the prosecutor's questions and closing

argument did not amount to bolstering; and the prosecutor's statement that the

victim did not deny stealing scrap metal was proper because it was based on the

evidence admitted at trial.  As for the prosecutor's incorrect statement that the

victim and his cousin observed Petitioner shoot his dog, defense counsel chose to

point out the error in his closing argument, as opposed to, interrupting the

prosecutor's closing argument and making an objection.  This was a reasonable

trial tactic, not ineffective assistance.  Any objections or a motion for a mistrial

likely would have been futile, and attorneys are not required to file futile motions

to avoid a claim of ineffective assistance. *Murray v. Maggio*, 736 F.2d 279, 283

(5th Cir. 1984).

The additional contention that the cumulative effect of errors deprived

Petitioner of a fair trial is not a cognizable claim on habeas corpus review.

*Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*,

425 F.3d 250, 256 (6th Cir. 2005)).  Habeas relief is not warranted on Petitioner's

claim about trial counsel's failure to object to the prosecutor's conduct.

## C.  The Sentence

In his third and final claim, Petitioner alleges that the trial court's upward

departure from the sentencing guidelines necessitates reversal and re-sentencing.

Petitioner contends that the trial court mis-scored some of the offense variables,

relied on unsupported facts to depart from the guidelines, and abused its discretion by exceeding the guidelines.

The Michigan Court of Appeals determined that there were substantial and compelling reasons for departing from the guidelines and that the trial court did not abuse its discretion by departing from the guidelines.  The Court of Appeals stated that the psychological damage to the victim, the prolonged abuse, and the extensive number of acts committed against the victim were objective and verifiable reasons for departing from the guidelines.  The Court of Appeals also determined that the sentence was proportionate under state law.

Petitioner's claim is not cognizable in this habeas corpus proceeding because a state court's interpretation and application of sentencing laws and guidelines "is a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  Petitioner's maximum sentence of sixty years falls with the statutory maximum of life imprisonment, *see* Mich. Comp. Laws § 750.520b(2)(b), and a sentence within the limits set by statute is not a ground for habeas relief.  *Townsend v. Burke*, 334 U.S. 736, 741 (1948).

Petitioner implies that his sentence violates his Sixth Amendment right to a jury under *Alleyne* because a conviction for first-degree CSC with a person under

thirteen years of age triggers a mandatory minimum sentence of twenty-five years. Mich. Comp. Laws § 750.520b(2)(b). And, according to him, a conviction for second-degree CSC with a person under the age of thirteen years triggers an increase in the offense variables used to establish the sentencing guidelines range.

The parties, however, stipulated that the statute requiring a mandatory minimum sentence of twenty-five years in prison for first-degree CSC committed with a person under the age of thirteen did not apply to Petitioner's case because the victim was older than thirteen when the law went into effect. (Sentencing Tr. at 3-4, Sept. 28, 2012.) And *Alleyne* "dealt with an increase to the statutory range – not increases to a defendant's range under the Sentencing Guidelines." *United States v. Bell*, 795 F.3d 88, 104 (D.C. Cir. 2015), *cert denied*, 137 S. Ct. 37 (2016), and *cert denied sub nom. Wilson v. United States*, 137 S. Ct. 37 (2016). *Alleyne* does not prohibit sentencing enhancements or upward departures from the sentencing guidelines. *See id.*; *accord United States v. Gevock*, No. 2:11-cr-526, 2016 WL 4209516, at *9 (E.D. Cal. Aug. 9, 2016) (Magistrate Judge's unpublished R. & R.), adopted by *United States v. Gevock*, No. 2:11-cr-526, 2016 WL 6298534 (E.D. Cal. Oct. 27, 2016) (unpublished); *Coppola v. O'Brien*, No. 2:14-cv-13, 2015 WL 3771748, at *7 (N.D. W. Va. June 17, 2015) (unpublished Order adopting the Magistrate Judge's R. & R.), *aff'd*, 616 F. App'x 80 (4th Cir.

2015), *cert. denied*, 136 S. Ct. 843 (2016); *United States v. Moss*, No. 2:03-cv-0550, 2015 WL 251890, at \*21 (E.D. Cal. Jan. 2015) (unpublished Magistrate Judge's R. & R.).  Because *Alleyne* does not prohibit an upward departure from the sentencing guidelines range, Petitioner's claim lacks merit.

## V.  Conclusion

The state appellate courts' adjudications of Petitioner's claims were not contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts.  The state courts' opinions also were not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.  The Court therefore denies the petition for writ of habeas corpus.

## VI.  Certificate of Appealability

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement

to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists could not disagree with the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore declines to issue a certificate of appealability. Petitioner nevertheless may proceed *in forma pauperis* on appeal, because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## VII. ORDER

For the reasons set forth above,

IT IS ORDERED that Petitioner's Motion for Stay **[No. 8]** is DENIED.

IT IS FURTHER ORDERED that the Petition for Writ of Habeas Corpus **[No. 1]** is DENIED.

IT IS FURHTER ORDERED that a Certificate of Appealability is DENIED.

IT IS FURHTER ORDERED that a Leave to Proceed *In Forma Pauperis* on Appeal is GRANTED.

34

IT IS FURHTER ORDERED that the Clerk of the Court amend the caption

to reflect the correct spelling of Respondent's first name, which is "Randall."

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  February 3, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 3, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager